T.C. Summary Opinion 2009-163


UNITED STATES TAX COURT


GEORGE TABOH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17522-07S.               Filed October 21, 2009.


George Taboh, pro se.

<u>Melanie M. Garger</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code (Code) in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in

effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After a concession, the issues for decision are whether for 2006 petitioner is entitled to: (1) A dependency exemption deduction for his minor child, T.A.N.;[1] (2) an earned income credit; and (3) head of household filing status.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Massachusetts when he filed his petition.

Petitioner earned a bachelor's degree from Northeastern University with a dual major in accounting and finance. Petitioner worked full time as a database administrator until he lost his job in 2001. Since then petitioner has worked itinerantly at temporary jobs. During 2006 petitioner worked for three different employers, collected unemployment benefits for part of the year, and owned and operated an unincorporated accounting and tax preparation service doing business as G T Business Center. Petitioner lived in a two-bedroom apartment that the government subsidized in varying amounts according to petitioner's income at a given time.

---

[1]The names of minor children are redacted. See Rule 27(a)(3).

Petitioner had a relationship with Stella Angwafo (Ms. Angwafo). They had a child together, T.A.N., born in 1998. T.A.N. turned age 8 in 2006 and was a student in primary school. Petitioner and Ms. Angwafo had separated before 2006. According to petitioner, a State court order (court order) awarded primary physical custody of T.A.N. to Ms. Angwafo, required petitioner to pay child support of $110 per week, and allowed petitioner custody of T.A.N. for five nights out of every 2-week period.

On November 28, 2006, petitioner and Ms. Angwafo signed a new State court document entitled, "Agreement for Judgment" (agreement). Pertinent provisions in the agreement include: (1) Continuing to vest Ms. Angwafo with primary physical custody of T.A.N.; (2) reducing petitioner's custody of T.A.N. to three nights out of every 2-week period; (3) requiring petitioner to pay child support of $110 per week via wage assignment; and (4) alternating the dependency exemption deduction for T.A.N. such that petitioner may claim T.A.N. as a dependent for 2006 and all subsequent even-numbered years "if [petitioner] is current in his child support obligations" and entitling Ms. Angwafo unconditionally to the dependency exemption deduction for 2007 and all subsequent odd-numbered years.

Petitioner electronically filed his timely 2006 Federal income tax return, listing his occupation as accounting and reporting his own business, G T Business Center, and his own name

as the paid preparer.  On the return petitioner reported adjusted gross income of $17,369, consisting of:  (1) Wages of $10,489; (2) interest of $10; (3) dividends of $11; (4) business loss from G T Business Center of $361; and (5) unemployment compensation of $7,220.  Petitioner claimed three exemptions for 2006, one for himself and two for dependents:  R.T.D., a minor who is not his biological child, and T.A.N.  The three exemptions resulted in a total exemption deduction of $9,900.  In addition, petitioner filed as a head of household, leading to a standard deduction of $7,550.  These deductions resulted in zero taxable income for petitioner for 2006.  Petitioner requested a refund of $5,228 arising from Federal income tax withholdings of $1,182, an earned income credit (EIC) of $3,996, and a credit for Federal telephone excise tax of $50.

Petitioner attached to the return:  (1) Three Forms W-2, Wage and Tax Statement, corresponding to his three jobs during 2006; (2) a Schedule EIC, Earned Income Credit Qualifying Child Information, claiming R.T.D. and T.A.N. as qualifying children; (3) a Schedule C, Profit or Loss From Business, for G T Business Center; and (4) a preparer's standard perjury statement stating among other declarations that "the information contained in this electronic tax return is the information furnished to me by the taxpayer."  Petitioner did not attach any other forms or statements.

Respondent examined petitioner's 2006 Federal income tax return, froze $3,996 of the refund to prevent payment of the EIC, and issued a notice of deficiency for $4,957 consisting of the following adjustments: (1) Disallowing petitioner's two dependency exemption deductions; (2) adjusting petitioner's filing status from head of household to single; and (3) disallowing the EIC because petitioner "did not establish that [he was] entitled to the earned income credit". Subtracting the EIC, respondent determined petitioner owed an additional tax of $961 for 2006, plus interest.

Petitioner timely petitioned this Court, stating that with respect to T.A.N. for 2006 "[t]he child is a biological child to the petitioner with documentation to support the claim." Petitioner conceded that he was not entitled to claim R.T.D. as a dependent.

Most of the trial focused on whether petitioner was in arrears on his child support payments at the end of 2006. The Court received into evidence a "Child Support Allocation Record" issued by the Commonwealth of Massachusetts Department of Revenue Child Support Enforcement Division. The record shows that during the first part of 2006 until May 22 petitioner for the most part complied with his weekly child support obligation. Then petitioner lost his job and did not make another payment until September 5, 2006. From September through December 2006

petitioner followed a more varied pattern of payments, paying approximately $180 biweekly.  Toward the end of the year petitioner made a few additional payments, trying to catch up on his delinquency.  Petitioner's total child support obligation for 2006 was $5,720 ($110 per week times 52 weeks), of which the child support allocation record shows that for the entire year petitioner paid $5,393.58.  Petitioner acknowledged that he was in arrears as of December 31, 2006, claiming that the total arrearage was $326.42 ($5,720 minus $5,393.58) and that the shortfall was due to his low income and the purchase of holiday presents for T.A.N. in lieu of paying the end-of-the-year child support arrearage.

Respondent called Julie Lavin Flaherty as a witness.  Ms. Flaherty is the keeper of the records and disclosure officer for the Massachusetts Department of Revenue.  The Court received into evidence a certified "Financial Summary Report" that Ms. Flaherty provided from the Commonwealth of Massachusetts Department of Revenue Child Support Enforcement System.  Though the Financial Summary Report drew its information from the same database as the child support allocation record, Ms. Flaherty testified to, and the Financial Summary Report shows, that petitioner had an arrearage of $579.83 as of December 31, 2006.  The difference of $253.41 from petitioner's figure arises because in January 2006 petitioner paid $186.97 for arrearage from a prior year and

because petitioner paid $66.44 in penalties and interest for late payments in 2006.

## Discussion

### I. Burden of Proof

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of showing that the determination is in error. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 7491(a) the burden may shift to the Commissioner regarding factual matters if the taxpayer produces credible evidence and meets the other requirements of the section. Petitioner does not argue that he satisfied the elements for a burden shift, but even if he did advance this argument, he did not produce sufficient evidence to support a burden shift. Accordingly, the burden of proof remains on petitioner.

### II. Dependency Exemption Deduction

Deductions, including dependency exemption deductions, are a matter of legislative grace, and taxpayers must satisfy the statutory requirements for claiming the deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

A taxpayer may claim a dependency exemption deduction for each individual who is a dependent (as defined in section 152) of the taxpayer for the year. Sec. 151(a), (c). Section 152(a)

defines the term "dependent" in pertinent part to include a "qualifying child".  A qualifying child includes the son or daughter of a taxpayer who has the same principal place of abode as the taxpayer for more than one-half of the year, who is under age 19 as of the close of the year, and who has not provided over one-half of his own support for the year.  Sec. 152(c).

With respect to the principal place of abode requirement, the court order and the agreement each awarded primary physical custody to Ms. Angwafo.  From January 1 to November 28, 2006, Ms. Angwafo had custody of T.A.N. for nine nights out of every 2 weeks (64 percent).  Once the new agreement went into effect on November 28, 2006, Ms. Angwafo had custody of T.A.N. for 11 nights out of every 2 weeks (79 percent).  As a result, Ms. Angwafo had custody of T.A.N. for more than one-half of the nights of 2006; therefore, she is the parent entitled to claim a dependency exemption deduction for T.A.N. for 2006.  Sec. 152(c)(1)(B).

However, petitioner might still be entitled to claim T.A.N. as a dependent for 2006.  As pertinent here, under section 152(e)(2), a noncustodial parent may claim the qualifying child as a dependent if the custodial parent signs a written declaration stating that she will not claim the child as a dependent on her return for the year and the noncustodial parent attaches the declaration to his Federal income tax return.

See <u>Miller v. Commissioner</u>, 114 T.C. 184, 189-191 (2000).  For definitional purposes, the parent with whom the child resided for the greater portion of the year is the custodial parent.  Sec. 152(e)(4)(A).  Since we have already found that T.A.N. resided with Ms. Angwafo for the greater portion of 2006, Ms. Angwafo was the custodial parent for 2006 and petitioner was the noncustodial parent.

To qualify for section 152(e)(2), the parents must meet certain preliminary conditions found in section 152(e)(1):  the child must receive "over one-half of the child's support during the calendar year from the child's parents" where:  (1) The parents are "divorced or legally separated under a decree of divorce or separate maintenance," "are separated under a written separation agreement," or lived "apart at all times during the last 6 months of the calendar year," and (2) the "child is in the custody of 1 or both of the child's parents for more than one-half of the calendar year".  Sec. 152(e)(1); <u>King v. Commissioner</u>, 121 T.C. 245, 251 (2003) (holding that section 152(e)(2) is available even if the parents were never married).  For 2006 petitioner and Ms. Angwafo satisfied these initial requirements.  They provided over one-half of T.A.N.'s support for the year, they lived apart at all times during the year; and T.A.N. was in the custody of one or the other parent during all of 2006.

With respect to the attached declaration, section 152(e)(2)(A) requires that the written declaration be "in such manner and form as the Secretary may by regulations prescribe". The relevant regulation provides:

> Q-3 How may the exemption for a dependent child be claimed by a noncustodial parent?
>
> A-3 A noncustodial parent may claim the exemption for a dependent child only if the noncustodial parent attaches to his/her income tax return for the year of the exemption a written declaration from the custodial parent stating that he/she will not claim the child as a dependent for the taxable year beginning in such calendar year. The written declaration may be made on a form to be provided by the Service for this purpose. Once the Service has released the form, any declaration made other than on the official form shall conform to the substance of such form.

Sec. 1.152-4T, Q&A-3, Temporary Income Tax Regs., 49 Fed. Reg. 34459 (Aug. 31, 1984) (emphasis added).

Thus a taxpayer may attach Internal Revenue Service Form 8332, Release of Claim to Exemption for Child of Divorced or Separated Parents, or the taxpayer may attach a document that conforms to its substance. Miller v. Commissioner, supra at 189 (citing section 1.152-4T(a), Q&A-3, Temporary Income Tax Regs., supra).

Petitioner did not attach Form 8332 or any other conforming document to his return. The failure to attach a declaration is sufficient grounds by itself to deny the deduction because section 152(e) requires strict compliance. See Brissett v. Commissioner, T.C. Memo. 2003-310 (holding that with respect to

attaching the declaration, "we are bound by the language of the statute as it is written and the accompanying regulations").

Petitioner argues that under the agreement he is entitled to claim T.A.N. as a dependent for 2006 and subsequent even-numbered years. Nonetheless, even if petitioner attached the agreement to his return, the agreement does not conform in substance to Form 8332 because it contains a condition; namely, petitioner is entitled to the dependency exemption deduction for T.A.N. only "if * * * [petitioner] is current in his child support obligations". Petitioner's conditional agreement stands in contrast to the divorce agreement in <u>Boltinghouse v. Commissioner</u>, T.C. Memo. 2003-134, where the Court held that only a release that is unconditional meets the requirements of section 152(e). The purpose of requiring an unconditional release is to compel parents to resolve dependency disputes "'without the involvement of the Internal Revenue Service.'" <u>Bramante v. Commissioner</u>, T.C. Memo. 2002-228 (quoting H. Rept. 98-432 (art 2), at 1499 (1984)) (holding that for a written declaration to be valid, the custodial parent's release must be clear, unambiguous, and unconditional). Further, petitioner was in default on the specific terms of the agreement. We are not a court of equity, and we may not intervene in matters beyond our jurisdiction. <u>Scarangella v. Commissioner</u>, T.C. Memo. 1969-13, affd. 418 F.2d 228 (3d Cir. 1969).

In summary, the agreement was not attached, and for the reasons stated above, the agreement does not conform in substance to the written declaration that the Secretary prescribed and the statute requires.[2] Accordingly, T.A.N. was not petitioner's "qualifying child" under the exception of section 152(e)(2) or any other provision of the Code. We conclude that petitioner is not entitled to claim a dependency exemption deduction for T.A.N. for 2006, and we sustain respondent's determination to that effect.

## III. Earned Income Credit

Individuals may be eligible for an earned income credit, calculated as a percentage of earned income, if they meet certain criteria. Sec. 32(a)(1); Rowe v. Commissioner, 128 T.C. 13, 15 (2007). Because petitioner conceded R.T.D. was not a qualifying child for 2006 and because we have found that T.A.N. was not petitioner's qualifying child for 2006, the pertinent criterion here is whether petitioner had earned income no greater than the amount that the Code permits for eligible individuals with no qualifying children. See sec. 32(b)(2); Rowe v. Commissioner, supra. Section 32 indexes the ceilings such that for 2006, the upper limitation ("completed phaseout amount") of earned income

---

[2]In future years petitioner might avoid the issue of whether T.A.N. was his qualifying child by attaching to his Federal income tax return a properly completed Form 8332 which Ms. Angwafo has signed.

for individuals with no qualifying children was $12,120. Sec. 32(j) (providing for an inflation adjustment); Rev. Proc. 2005-70, sec. 3.06(1), 2005-2 C.B. 979, 982 (announcing the specific amount for 2006).

Earned income for purposes of the EIC includes wages and earnings from self-employment. Sec. 32(c)(2)(A). A net loss from self-employment reduces earned income. Sec. 1.32-2(c)(2), Income Tax Regs. Earned income excludes unemployment compensation. Id. Earned income also excludes dividends and interest. Oppenheim v. Commissioner, 31 B.T.A. 563, 564-565 (1934) (earned income for determining credits means compensation for personal services); Powers v. Commissioner, T.C. Memo. 2000-5 (similar), affd. without published opinion 234 F.3d 1269 (6th Cir. 2000); Harroun v. Commissioner, a Memorandum Opinion of this Court dated July 20, 1945 (similar, citing Oppenheim); Schomberg v. United States, 48 AFTR 2d 81-5789, 81-2 USTC par. 9609 (E.D. Cal. 1981) (investment proceeds from the sale of stock, interest, and dividends are not earned income for EIC).

Thus in 2006 petitioner had earned income of $10,128 ($10,489 in wages minus the $361 loss from his business), which is below that year's pertinent complete phaseout amount of $12,120. Accordingly, petitioner qualifies for the earned income credit for 2006 as an eligible individual with no qualifying

children.  The amount of the earned income credit will be computed under Rule 155.

IV.  Filing Status

As pertinent here, head of household filing status requires, among other elements, the finding that the taxpayer's residence was the principal place of abode for a qualifying child for more than one-half of the year.  Sec. 2(b)(1)(A); Rowe v. Commissioner, supra at 16-17.  Because we have already found that T.A.N. was not a qualifying child of petitioner for 2006 and petitioner's residence was not the principal place of abode for T.A.N. for more than one-half of 2006, we sustain respondent's determination that petitioner is not entitled to head of household filing status for 2006.

To reflect our disposition of the issues,

Decision will be entered

under Rule 155.